**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andres Sotil, an Arizona resident, | No. CV-10-2034-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Drake Cement, LLC, a Delaware limited liability company, | |
| Defendant. | |

Pending before the Court are three motions: (1) Defendant's Motion for Summary Judgment (Doc. 51); (2) Defendant's Motion for Summary Disposition on its Motion for Summary Judgment (Doc. 64); and (3) Defendant's Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 66). For the reasons stated below, Defendant's Motion for Summary Judgment is granted. Defendant's motions for summary disposition of its motion and to strike Plaintiff's Response are denied as moot.

## BACKGROUND

On January 2, 2007, Defendant Drake Cement, LLC hired Plaintiff Andres Sotil, who is a Peruvian national, to work as a civil engineer on a project in Drake, Arizona (the "Drake Project"). The Drake Project involved the construction of a cement manufacturing facility. Defendant employed a total of fourteen engineers on the Drake Project, eleven of whom were Peruvian, and the remaining three of whom were Chinese, Honduran, and Mexican. (Doc.

52-2, Ex. B at ¶¶ 5–6). When hired, Plaintiff's annual salary was $65,000. This annual salary increased to $70,000 in April 2008. (Doc. 52-1, Ex. A at ¶ 5). The three non-Peruvian engineers employed by Defendant on the Drake Project each had an annual salary that was less than Plaintiff's. (Doc. 52-1, Ex. A at ¶ 18; Doc. 52-2, Ex. B at ¶¶ 7, 20).

Defendant hired CCC Group, Inc. to be the general contractor for the Drake Project. As general contractor, CCC was responsible for building the project. Some of CCC's engineers were American. Defendant Drake Cement and CCC are separate and unrelated entities. (Doc. 52-1, Ex. A at ¶ 7; Doc. 52-2, Ex. B at ¶ 3). Defendant could not hire, fire, discipline, or control the pay rate of CCC employees. (*Id.*).

In January 2010, Plaintiff had a confrontation with Enrique Rozas, a fellow Peruvian who was Defendant's Project Manager. Rozas had been engaging in discussions with an entity known as the Staten Island Terminal Project (the "SIT Project")[1] regarding possible future employment for Rozas and his team. Plaintiff, who was a potential member of this team, disagreed with the positions Rozas took in those discussions and confronted Rozas. (Doc. 52-1, Ex. A at ¶ 12). As a result of this confrontation, Rozas attempted to terminate Plaintiff's employment with the Drake Project. (*Id.*). Another Peruvian co-worker, Oscar Diaz, also became involved in the dispute and attempted to remove Plaintiff from employee-organized carpooling and lunches. (*Id.*). Upon learning of Rozas's and Diaz's actions, Defendant Drake Cement intervened, issuing them written warnings to cease and desist such unauthorized conduct. (Doc. 65-1, ¶ 19). Defendant verbally reprimanded Plaintiff, Diaz, and Rozas for allowing their differences to negatively impact their working environment. Defendant also reassigned Plaintiff from Rozas's supervision to the supervision of Cliff Ayres, Drake's Chief Operating Officer. (Doc. 52-2, Ex. B at ¶ 9). Shortly after Plaintiff's disputes with Rozas and Diaz, Plaintiff engaged in threatening, unprofessional and disrespectful outbursts toward Defendant's President, Marco Gomez-Barrios. (Doc. 52-1, Ex. A at ¶ 12). As a result of Plaintiff's outbursts, Defendant placed him on probation. (*Id.*).

---

[1] The SIT Project was located in New York and was unrelated to Drake Cement.

On February 8, 2010, Plaintiff filed a Charge of Discrimination with the EEOC. (Doc. 52-1, Ex. A-1). In the Charge, Plaintiff alleged that Defendant paid him less than similarly-situated Americans and retaliated against him by placing him on probation after he voiced opposition to this practice. (*Id.*). The Charge was dismissed by the EEOC on June 29, 2010. (Doc. 52-1, Ex. A at ¶ 12).

By May 2010, the Drake Project was substantially complete. (Doc. 65-1, ¶¶ 40–41). On May 7, 2010, Ayres notified Gomez-Barrios that Defendant's engineering needs were almost completed and recommended that Defendant "immediately notify the following civil engineers that their services will no longer be required by Drake, effective May 31, 2010: Oscar Diaz, Berenice Barranco, [Plaintiff] Andres Sotil and Raul Laitano. (Doc. 52-2, Ex. B-3). These four engineers constituted Defendant's entire civil engineering staff. (Doc. 52-2, Ex. B at ¶ 6). That same day, Mr. Ayres informed Laitano and Barranco, Honduran and Mexican nationals respectively, that their employment as civil engineers was being terminated. (*Id.* at ¶ 14). In December 2009, however, Defendant, anticipating the completion of the Drake Project, had notified its employees of several future job openings, including six openings for Production Supervisor positions. (*Id.*). At that time, Laitano and Barranco applied for, and were hired as, Production Supervisors, effective upon their termination as civil engineers. (*Id.*). Accordingly, upon their termination as civil engineers in May 2010, Laitano and Barranco were retained by Defendant as Production Supervisors. Plaintiff was also notified of the job openings in December 2009, but elected not to apply. (Doc. 65-1, ¶ 39). On May 11, 2010, Ayres notified Plaintiff that he was being laid off. (*Id.* at ¶ 46).

On September 22, 2010, Plaintiff filed his Complaint in the instant action, bringing claims against Defendant for discrimination and retaliation. (Doc. 1). On December 1, 2010, the Court entered a Case Management Order setting August 1, 2011 as the deadline for completing fact discovery and setting September 30, 2011 as the dispositive motion deadline. On September 30, 2011, Defendant filed its motion for summary judgment on both claims. (Doc. 51). On November 2, 2011, Plaintiff filed a motion for an extension of time to respond to Plaintiff's summary judgment motion. The Court granted Plaintiff's motion, extending the

1  time in which Plaintiff could respond to November 10 and warning that "[n]o further
2  extensions will be granted." (Doc. 63). Defendant did not file its response until November
3  14.

**DISCUSSION**

**I.     Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250) (emphasis in original).

Once the moving party has detailed the basis for its motion, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Summary judgment should be entered where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)

**II.    Legal Analysis**

### A.     Claim One – Racial Discrimination

Plaintiff alleges that due to his Peruvian national origin, Defendant paid him less than other similar situated employees, removed some of his job responsibilities, and ultimately terminated him, in violation of Title VII. (Doc. 1, ¶ 27–28). "[A] plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000). "Specifically, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably."*Id.* Plaintiff, however, has not provided the Court with any admissible evidence which might establish these elements.[2] Nor does he argue in his Response to Defendant's summary judgment motion that there are genuine issues of material fact that preclude the entry of summary judgment against him. (*See* Doc. 65). Rather, his Response is structured as a request that the Court give him more time to conduct discovery: "Pursuant to Rule 56(d), Sotil is seeking additional time to obtain the specific, and limited, evidence identified in the Affidavit attached as 'Exhibit 1' to Plaintiff's Statement of Facts." (Doc. 65 at 2). Plaintiff's Response further states that "[t]he reasons such evidence is necessary in this matter is [sic] also identified in that Affidavit." (Doc. 65 at 2).

Federal Rule of Civil Procedure 56(d) allows the Court to defer consideration of a summary judgment motion where the non-movant shows that "it cannot present facts

---

[2] Plaintiff contends that he "filed a verified Complaint in this matter, which has the same force and effect as an affidavit." (Doc. 65-1 at 16). The Court, however, previously ordered that "Plaintiff will be prohibited from offering any testimony in this action." (Doc. 44 at 1). This sanction was based on Plaintiff's repeated violations of the Court's orders, his failure to facilitate his out-of-country deposition, and his failure to provide documents requested by Defendant. (*Id.*). Because Plaintiff would be precluded from testifying at trial, his "affidavit" cannot establish a genuine issue of material fact for trial. Furthermore, even were the Court to take the "affidavit" into consideration, it does not establish a genuine issue. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("This court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.").

1  essential to justify its opposition" and therefore needs to conduct additional discovery. "But
2  this rule requires discovery only 'where the non-moving party has not had the opportunity
3  to discover information that is essential to its opposition.'" *Roberts v. McAffee, Inc.*, 660 F.3d
4  1156, 1169 (9th Cir. 2011) (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th
5  Cir. 2001)). A district court that denies a Rule 56(d) motion abuses its discretion "only if the
6  movant diligently pursued its previous discovery opportunities." *Panatronic USA v. AT&T
7  Corp.*, 287 F.3d 840, 846 (9th Cir. 2002) (internal quotation omitted). The discovery deadline
8  was August 1, 2011. Plaintiff has not shown either that he diligently pursued his previous
9  discovery opportunities or that future discovery would reveal facts essential to his opposition.
10  Plaintiff claims that the reasons additional discovery is necessary are identified in an attached
11  affidavit. (Doc. 65 at 2). As Defendant points out in its Reply, however, no affidavit was
12  attached to either Plaintiff's Response or to his statement of facts. Nor has any affidavit been
13  filed separately. Defendant's request that the Court reopen discovery and defer its ruling on
14  Defendant's summary judgment motion is denied.

### B. Claim Two – Retaliation

Like Plaintiff's discrimination claim, his retaliation claim suffers from a complete lack of supporting evidence. To establish a prima facie case of retaliation, Plaintiff must establish that he (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) that there was a causal link between his protected activity and the adverse employment action. *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007). Plaintiff has not provided the Court with any admissible evidence which might establish these elements. Nor does he argue in his opposition to Defendant's motion that any genuine issues of fact exist for trial. In short, in regards to both his discrimination and his retaliation claims, Plaintiff has failed to establish "evidence [ ] such that a reasonable jury could return a verdict" in his favor. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The Court will therefore grant summary judgment against Plaintiff on both claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) (holding that summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial").

**CONCLUSION**

Plaintiff has failed to establish the existence of elements which are essential to his case and on which he will bear the burden of proof at trial. He has not shown that further discovery would reveal the existence of such elements, nor that he diligently pursued his previous discovery opportunities.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 51) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Disposition on its Motion for Summary Judgment (Doc. 64) is **denied as moot.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Response to Motion for Summary Judgment (Doc. 66) is **denied as moot.**

The Clerk of Court is directed to **terminate this action.**

DATED this 21st day of February, 2012.

G. Murray Snow
United States District Judge